# Richmond

OTTIS ZIMMERMAN v. SAVOY HOTEL CORPORATION.

April 26, 1957.

Record No. 4664.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Herman A. Sacks* (*Sacks & Sacks,* on brief), for the plaintiff in error.

*Joseph E. Baker* (*M. R. Broudy* and *Broudy & Broudy,* on brief), for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Ottis Zimmerman filed her motion for judgment against Savoy Hotel Corporation to recover the sum of $2,400, the alleged cost of installing a new boiler furnishing heat and hot water in a building owned by Savoy Hotel Corporation and leased to Zimmerman for the operation of a hotel business. Zimmerman alleged that the boiler previously installed in the building was worn out and beyond repair; that under the terms of the lease it was the duty of Savoy Hotel Corporation to replace the boiler; that it refused to do so; and that she had installed a new boiler and was entitled to reimbursement therefor. Savoy Hotel Corporation denied liability for the cost of the installation.

By agreement all matters of law and fact were submitted to the trial court without a jury. Upon hearing the evidence the trial court entered a judgment for the defendant, Savoy Hotel Corporation, and we granted the plaintiff, Zimmerman, a writ of error.

We summarize the material and undisputed facts, referring to the parties as they appeared in the trial court. The defendant, Savoy Hotel Corporation, owns a building on East Main street, in the city of Norfolk, which it leased to the plaintiff, Ottis Zimmerman, for hotel purposes, under a written lease expiring February 28, 1960. On or about March 1, 1956, the boiler which had been installed in the building for more than forty years and which supplied heat and hot water to the building was found to be defective. A heating contractor employed by Zimmerman advised her that the boiler was worn out and could not be repaired. Zimmerman notified the rental agent who was managing the property for the defendant of the necessity of renewing the boiler. The agent conveyed this information to Charles Lewis, an officer of the defendant corporation, who was then in Florida. Lewis replied that he would "take it up" upon his return to Norfolk within two or three days. Deeming the immediate installation of a new boiler necessary to the continuance of the hotel business, the plaintiff had one installed at a cost of $2,400. The defendant corporation refused to reimburse the plaintiff for the cost of the installation and the present suit followed.

The lease contains these pertinent provisions:

"13. *Repairs by Lessee.* Lessee covenants that, during the term of this lease and any renewals hereof, Lessee will, at his own expense, keep in good order and repair (and make such renewals thereof from

time to time as may be necessary or advisable) the heating plant, elevators, all pipes, conduits, wires and other appurtenances of said premises, including all water, gas and waste pipes and fixtures appurtenant thereto; that Lessee will, at his own expense, have all choked waste pipes and toilets promptly unstopped, have all flues kept clean, and have all broken glass (both interior and exterior) promptly replaced; and that Lessee will, at his own expense, keep all other parts of said premises in good order and condition, ordinary wear and tear excepted (such exception being inapplicable to the heating plant, elevators, pipes, glass, and other items above mentioned)."

"25. *Damage by Fire.* It is agreed that if the premises hereby demised, or the building or buildings of which the demised premises are a part, or any improvements now or hereafter constructed thereon or added thereto, shall be condemned by any public authority, or shall be damaged by fire or otherwise, so as to render same or any portion thereof, in the opinion of Lessor, untenantable, Lessor or Lessee shall have the right, at any time within ninety (90) days after the condemnation or fire, to cancel and terminate this lease, by giving to Lessee or Lessor within said ninety (90) day period written notice of intention so to do. If the lease is not terminated the demised premises shall be restored, with reasonable dispatch, by and at the expense of Lessor, and the rent due hereunder shall be proportionately abated, according to the loss of use, until said premises are substantially restored."

The argument of the plaintiff, Zimmerman, is that construing paragraph 13 in the light of Code, § 55-226, it was not her duty, as lessee, to replace or renew the furnace. Moreover, she says, paragraph 25 places such obligation on the defendant lessor.

We do not agree with this contention. It is not necessary to decide here whether the usual covenant of a lessee to repair or keep in repair, requires him to renew or replace a worn-out heating plant.[1] Paragraph 13 is more than a covenant by the plaintiff lessee to keep the heating plant in repair. It is a covenant that the "Lessee will, at his own expense, keep in good order and repair (*and make such renewals thereof* from time to time as may be necessary or advisable) *the heating plant*, elevators," etc. (Emphasis added.) By this provision the lessee agrees, not only to keep the heating plant in good

---

[1] For a discussion of the subject, see 32 Am. Jur., Landlord and Tenant, § 797, p. 680; Annotations: 45 A. L. R. 52; 20 A. L. R. 2d 1347.

order and repair, but to make such *renewals* thereof as may be necessary. A "renewal," as here used, means a replacement of the old by something new. 76 C. J. S., p. 1164.

Moreover, in the last phrase of the paragraph the lessee agrees, at her own expense, to "keep all other parts of said premises in good order and condition, *ordinary wear and tear excepted (such exception being inapplicable to the heating plant*, elevators, pipes, glass, and other items above mentioned)." (Emphasis added.) Thus the exception as to "ordinary wear and tear" is expressly made inapplicable to the heating plant.

It is clear that by these provisions of paragraph 13 the parties agree that should the heating plant wear out and require renewal, the cost of such renewal is to be borne by the lessee.

But the plaintiff lessee argues that she is relieved of the obligation to renew or replace the furnace by Code, § 55-226, which reads thus:

*"Buildings destroyed or lessee deprived of possession; covenant to pay rent or repair; reduction of rent.*—No covenant or promise by a lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or repair or erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound. But in case of such destruction there shall be a reasonable reduction of the rent for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him."

Here the contention is that the lessee's obligation is merely to "keep or leave the premises in good repair;" that the heating plant was in effect "destroyed * * * in part," and that this occurred "without fault or negligence" on her part. Hence, the plaintiff says, under the terms of the statute her covenant does not have the effect of requiring her to rebuild or renew the heating plant, which was a substantial part of the building.

Assuming, but not deciding, that the heating plant was "destroyed * * * in part" within the meaning of the statute and through no fault or negligence of the plaintiff lessee, that does not relieve her of the

obligation to renew the plant if under the terms of the lease she has bound herself to do so. The statute expressly provides that in the stated circumstances a lessee's covenant to "keep or leave the premises in good repair" does not require him to repair or reconstruct the damaged buildings *"unless there be other words showing it to be the intent of the parties that he should be so bound."* (Emphasis added.) Thus, the provision in the statute relieving a lessee of the duty to repair or rebuild is inapplicable where, as here, the parties have expressly agreed that the lessee should rebuild or renew the heating plant. In this situation, the express agreement of the parties controls. *Stieffen* v. *Darling,* 158 Va. 375, 380, 381, 163 S. E. 353.

The final contention of the plaintiff lessee is that the lessor is bound by paragraph 25 to repair or replace the heating plant. Her contention is that because of the condition of the heating plant the premises were "damaged * * * otherwise" than by fire and became "untenantable," within the meaning of this paragraph; that under the provisions of the paragraph either party had the right to cancel or terminate the lease by giving the required notice to the other; that since the lease was not so "terminated," under the last sentence in the paragraph the premises were to be "restored, with reasonable dispatch, by and at the expense of Lessor;" and that such restoration included the renewal of the heating plant.

If this argument were sound the provisions of paragraph 25 would completely nullify the provisions of paragraph 13, which, as has been seen, bound the lessee to replace the heating plant. It is, of course, elementary that a contract is to be construed as a whole and effect given to every provision therein if possible. See *Ames* v. *American National Bank,* 163 Va. 1, 38, 39, 176 S. E. 204; *Carpenter* v. *Town of Gate City,* 185 Va. 734, 740, 741, 40 S. E. 2d 268, 271.

Clauses similar to paragraph 25, affecting the rights of the parties upon the destruction of or damage to buildings on the premises by fire or some other casualty, are frequently included in leases. It is generally held that such a clause refers to some major disaster which renders the premises untenantable and not merely to a deterioration of the buildings through age, decay, or want of repair. 32 Am. Jur., Landlord and Tenant, § 505, p. 411.

And, so, in the present lease the provision giving either party the right to terminate the lease and, if not terminated, requiring the lessor to restore the premises at his own expense "if * * * the building * * * be *damaged by fire or otherwise*" (emphasis added), so as to become

untenantable, refers to damage to the building by fire or by some similar major disaster, as distinguished from mere deterioration from ordinary wear and tear.

When so interpreted the provisions in paragraph 25 harmonize with those in paragraph 13 and both paragraphs become effective. Reading both paragraphs together we hold that it was the intention of the parties that the lessee should renew and replace the heating plant which admittedly had become defective through wear and tear.

Accordingly, the judgment is

*Affirmed.*